UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

PACIFIC REIGN OFFSHORE
ADVENTURES LLC, an Oregon limited
liability company; JOSHUA HENSON
and JESS MEDDOCK, individuals,

               Plaintiffs,

    v.

ARMSTRONG CONSOLIDATED,
LLC d/b/a ACI BOATS, a Washington
limited liability company; and OXE
MARINE INC., a Georgia corporation,

               Defendants.

CASE NO. 3:25-cv-5692

ORDER

THIS MATTER is before the Court on Defendant OXE Marine Inc.'s motion to dismiss for lack of personal jurisdiction and failure to state a claim, Dkt 15.

Plaintiffs Pacific Reign Offshore Adventures LLC, and its owners, Joshua Henson, and Jess Meddock (collectively "Pacific Reign") assert claims against OXE Marine Inc. ("OXE Inc.") for breach of express and implied warranties arising from Pacific Reign's OXE300 engine failures. OXE Inc. moves to dismiss Pacific Reign's claims for lack of jurisdiction and for failure to state a claim, arguing that Pacific Reign sued the wrong

party. Dkt. 15. OXE Inc. asserts that although its parent company, OXE Marine AB, may be responsible for the engines, OXE Inc. itself did not manufacture or sell the OXE engines or provide the warranty. *Id.* at 11.

OXE Inc.'s motion to dismiss for lack of personal jurisdiction is **DENIED**. OXE Inc.'s motion to dismiss for failure to state a claim is **GRANTED** with leave to amend.

## I.     BACKGROUND

Pacific Reign entered into a vessel construction contract with Defendant Armstrong Consolidated, LLC ("ACI") on June 30, 2021, for construction and purchase of a 34-foot catamaran named Pacific Reign (the "vessel"). Dkt. 1-1 at 2. In April 2022, Pacific Reign and ACI amended the contract to replace the specified Mercury engines with OXE300 engines, resulting in a price increase. *Id.* at 3. ACI acquired the OXE engines from Marine Propulsion, LLC d/b/a Diesel Outboards Northwest ("DONW"), a Washington limited liability company and distributor of OXE engines. *Id*; Dkt. 22 at 3. DONW has since gone out of business. Dkt. 22 at 3; Siebert Decl., Dkt. 25-1 at 1. ACI designed, built, and delivered the vessel in Washington. Dkt. 1-1 at 2. Pacific Reign took possession of the vessel on December 8, 2022. *Id.* at 3.

At the time of purchase, DONW provided Pacific Reign "with a link" to a recreational warranty for the OXE engines. Dkt. 3-1 at 27. That warranty provides:

> This factory warranty ("Warranty") is given by OXE Marine AB (publ), Swedish Reg. no 556889-7226 . . . for Outboards produced from 2021 onwards . . . and sold to any of OXE's Authorized Distributors or Dealers in the Territory (Defined below). The warranty provided herein is for the benefit of and valid towards OXE's Authorized Distributor/Dealer only. . . . The Warranty does not give rise to any legal obligations on behalf of OXE towards the end-users or towards any other customer of OXE's Authorized

Distributors/Dealers. The end-users and other customers must direct any inquiries or claims that they may have towards the relevant Distributor or Dealer with which they have entered a contract of sale. . . .

During the Warranty Period as defined below, and subject to the terms, limitations, and exclusions of this warranty, OXE Marine AB (publ) will bear the expense of, at its option, the repair, reinforcement, or replacement for any Defect of the OXE Outboard under normal and proper use and service. . . .

The warranties contained herein are exclusive and in lieu of all other warranties, whether express or implied including implied warranties of merchantability and fitness for a particular purpose.

*Id.* at 29, 34.

The warranty's contact information section lists physical addresses for both OXE Marine AB in Ängelholm, Sweden and OXE Marine Inc. in Albany, Georgia. *Id.* at 36. It also provides email addresses with the domain name oxemarine.com for each specific department, including warranty, technical support, and sales and marketing. *Id.* The email addresses do not distinguish between OXE Marine AB and OXE Inc.[1]

Pacific Reign experienced problems with the OXE300 engines almost immediately. *Id.* at 8. Pacific Reign notified DONW and ACI about the engine issues and DONW attempted several repairs. Dkt. 23 at 3. In May 2023, OXE Marine AB's Director

---

[1] At the end of 2021 (prior to Pacific Reign's OXE engine purchase and acceptance of the OXE engine warranty), OXE Marine AB purchased its US distribution and manufacturing contractors, Diesel Outboards, LLC, and Outdoor Network Manufacturing (ONM), LLC, which included ONM's "dedicated OXE manufacturing facility in Albany, Georgia." Dkt. 19 at 5; Spadafora Decl., Dkt. 20-1 at 2. As a result of that acquisition, two Georgia entities were formed: OXE Marine Inc. and OXE Marine Manufacturing Inc., with a shared address in Albany, Georgia. Spadafora Decl., Dkt. 20-2, 3. The OXE Marine website states that "OXE Marine is headquarter[ed] in Sweden, with sales and manufacturing operations in the US." Dkt. 24-1 at 2. It also states that certain engines are "assembled in Albany, Georgia, where OXE has its US office." *Id.* at 3. The contacts information section includes contact details for its Sweden office, along with a separate U.S. address and phone number shared by OXE Inc. and OXE Manufacturing. *Id.* at 8.

of Technical Service & Support, Christian Bernström, contacted Pacific Reign and apologized for the engines. Meddock Decl., Dkt. 23 at 3; Dkt. 23-1 at 14. He informed Pacific Reign that he would travel to Oregon to visit the vessel and "sort out all issues," with assistance from DONW. Meddock Decl., Dkt. 23 at 3. Meddock alleges that Bernström inspected the vessel and told him that DONW would no longer be in the picture and that "Oxe Marine" would take over warranty repair of the vessel. *Id.*

OXE Inc.'s CCO/U.S. Executive Vice President, Jeremy Davis, and Technical Area Manager, Bobby Willis, coordinated repair efforts with Pacific Reign. Meddock Decl., Dkt. 23 at 3; *see* Dkt. 23-2. After it was determined that Pacific Reign needed new engines, Meddock traveled to OXE Inc.'s facility in Georgia to inspect the OXE replacement engines and confirm their compatibility with the vessel. Meddock Decl., Dkt. 23 at 4. On July 28, 2023, Willis emailed the port where Pacific Reign's vessel was moored and copied Pacific Reign's owner Meddock. In the email, Willis stated: "I'm with Oxe Marine Inc[.] and we manufacture diesel outboard motors. We will be coming to your shipyard next week to do warranty exchange on two outboards on Pacific Reign boat." Dkt. 23-3 at 1. On August 3, 2023, OXE Inc. replaced the faulty engines. Dkt. 1-1 at 4.

Pacific Reign continued to experience engine issues and malfunctions. *Id.* Over the next six months, OXE Inc. engaged in substantial repair attempts, including replacing two starboard turbos, one port turbo, a powerhead engine, and adding new snorkel tubes to the hull. *Id.* In February 2024, after Meddock made another trip to OXE Inc.'s facility

1  in Georgia, OXE Inc. installed a third set of replacement engines. Meddock Decl., Dkt.

2  23 at 4.

3      Nevertheless, the problems continued. Dkt. 1-1 at 4. Meddock and Henson

4  emailed with several OXE Inc. employees, including Aftermarket Service Manager Kelly

5  Jordan to arrange diagnosis and repair work. Meddock Decl., Dkt. 23 at 5; *see also* Dkt.

6  23-4–7. In May 2024, Jordan solicited ACI's help in resolving a venting issue and

7  assured ACI that "OXE will pay of coarse [sic]" Armstrong Decl., Dkt. 21-3 at 2. ACI

8  invoiced OXE Inc. for the repair. Dkt. 21-4 at 2.

9      In 2024, while repair efforts were still underway, Pacific Reign and OXE Inc.

10  began settlement negotiations. Dkt. 22 at 5. Pacific Reign's marine consultant, Lonnie

11  Tiran, initially communicated with OXE Inc.'s executive Jeremy Davis. Tiran Decl., Dkt.

12  24 at 2. When negotiations stalled, Tiran was referred to "OXE Marine['s]" counsel,

13  Thomas Ögård, based in Sweden. *Id.* at 3. Ögård told Tiran that he represented OXE Inc.

14  in the United States, and that "Oxe Marine had 'stepp[ed] in'" to assist Pacific Reign and

15  other U.S. customers because OXE Marine's distributor "DONW had gone 'off grid.'"

16  *Id.* According to Tiran, Ögård confirmed that "OXE Marine Inc." would honor the OXE

17  Marine warranty, which includes remedies such as buyback of defective engines,

18  replacement costs, and technical support. *Id.* OXE Marine AB and OXE Inc. personnel

19  did not distinguish which entity was ultimately responsible for the warranty repairs in

20  their communications. *Id.*

21

22

1    Tiran also negotiated with OXE Inc.'s Seattle counsel, who offered a settlement

2    for all claims. The offer listed Pacific Reign and "OXE Marine Inc." as parties, and OXE

3    Inc.'s headquarters in Sweden. *Id.* at 5. An agreement was never reached.

4    On May 16, 2025, Pacific Reign revoked its acceptance of the vessel and

5    demanded that ACI refund the full purchase price paid, along with incidental and

6    consequential damages. Dkt. 3-1 at 38.

7    On July 1st, 2025, Pacific Reign sued, alleging five claims against ACI and OXE

8    Inc.: breach of contract, breach of written warranty, breach of warranty–failure of

9    essential purpose, violation of the Magnusson-Moss Warranty Act, and revocation of

10    acceptance. The first claim, breach of contract, is asserted only against ACI.

11    OXE Inc. moves to dismiss Pacific Reign's claims for lack of jurisdiction and for

12    failure to state a claim, arguing that Pacific Reign sued the wrong party. Dkt. 15. OXE

13    Inc. contends that it has no connection "whatsoever" to the manufacture and sale of the

14    engines involved in the breach of warranty claims. *Id.* at 5. It asserts that although it

15    performed some warranty repair work on behalf of its parent company, OXE Marine AB,

16    the work was done "*gratis*" and took place entirely in Oregon. Dkt. 26 at 2.

17    Pacific Reign and ACI both filed responses opposing OXE Inc.'s motion. Dkts.

18    19, 22. Pacific Reign contends that OXE Inc. was clearly involved in Pacific Reign's

19    purchase of OXE engines in Washington and in the ongoing repair of those engines

20    performed under the OXE warranty. Dkt. 22 at 2–3. ACI similarly contends that OXE

21    Inc. has been directly involved in "virtually every step" of the construction of Pacific

22

1   Reign's vessel, including initial delivery of the first set of engines and the subsequent

2   engine repair and replacement. Dkt. 19 at 13.

3       The Court first evaluates whether OXE Inc. is subject to the Court's exercise of

4   personal jurisdiction, and then addresses whether Pacific Reign has stated a plausible

5   claim for relief.

## II.   DISCUSSION

**A.   The Court has specific personal jurisdiction over OXE Inc.**

8       OXE Inc. argues that the Court lacks personal jurisdiction over it in Washington,

9   contending that it is a "Georgia corporation that does business in Georgia." Dkt. 15 at 5.

10  It asserts that it did not manufacture the engines or issue the warranty, and that there are

11  no allegations or evidence suggesting that OXE Inc. has ever conducted business in

12  Washington. *Id.*

13      Pacific Reign counters that OXE inc. actively distributes its engines to

14  Washington State and advertises its products online to Washington consumers. Dkt. 22 at

15  12. Pacific Reign argues that OXE Inc. provided the initial OXE engines to a Washington

16  dealer that were ultimately installed into Pacific Reign's vessel. *Id.* It argues that OXE

17  Inc. expressly agreed to assume the warranty obligations governed under Washington

18  law, and that OXE Inc. cannot now deny its connection to the forum.[2] *Id.*

19

20      [2] Alternatively, Pacific Reign argues that even if OXE Marine AB is the only named
    warrantor on the warranty, OXE Inc. acted "in concert" with OXE Marine AB as its "alter ego,"
21  and therefore the two companies should be treated as the same entity for purposes of jurisdiction.
    Dkt. 22 at 12–13. Pacific Reign emphasizes that the two entities "share a website, have joint
22  contact information, the same email addresses, and the same corporate governance." *Id.* The

1       In a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2) of the

2  Federal Rules of Civil Procedure, the plaintiff bears the burden of establishing that the

3  court has jurisdiction over the defendant. *Schwarzenegger v. Fred Martin Motor Co*., 374

4  F.3d 797, 800 (9th Cir. 2004). Absent an evidentiary hearing, plaintiffs need only make a

5  prima facie showing of jurisdictional facts to withstand a motion to dismiss. *Id*. That is,

6  the plaintiff need only demonstrate facts that if true would support jurisdiction over the

7  defendant. *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995). A plaintiff cannot

8  simply rest on the bare allegations of its complaint, but rather is obligated to come

9  forward with facts, by affidavit or otherwise, supporting personal jurisdiction. *Amba*

10  *Marketing Systems, Inc. v. Jobar International, Inc*., 551 F.2d 784, 787 (9th Cir. 1977).

11  "Conflicts between parties over statements contained in affidavits must be resolved in the

12  plaintiff's favor." *Schwarzenegger*, 374 F.3d at 800.

13       To establish personal jurisdiction, a party must show both that the long-arm statute

14  of the forum state confers personal jurisdiction over an out-of-state defendant, and that

15  the exercise of jurisdiction would be consistent with federal due process requirements.

16  *Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co*., 284 F.3d 1114, 1123 (9th

17  Cir. 2002). Washington's long-arm statute extends the court's personal jurisdiction to the

18  broadest reach that the United States Constitution permits, so the jurisdictional analysis

19  under state law and federal due process are the same. *Byron Nelson Co. v. Orchard*

20  *Mgmt. Corp*., 95 Wn. App. 462, 465 (1999); *Schwarzenegger*, 374 F.3d at 800–01. Due

21  ———————————

22  Court need not reach this argument because it concludes that Pacific Reign alleges sufficient
facts to support exercise of personal jurisdiction over OXE Inc. independent of this theory.

1  process requires that a nonresident defendant "have at least 'minimum contacts' with the

2  relevant forum such that the exercise of jurisdiction 'does not offend traditional notions

3  of fair play and substantial justice.'" *Id.* at 801 (citing *Int'l Shoe Co. v. Wash.*, 326 U.S.

4  310 (1945)).

5        A court may exercise either general or specific jurisdiction over a nonresident

6  defendant. *Dole Food Co. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002). For specific

7  jurisdiction, which is at issue here, the Ninth Circuit applies a three-prong test.

8  *Schwarzenegger*, 374 F.3d at 802. First, "[t]he non-resident defendant must purposefully

9  direct his activities or consummate some transaction with the forum or resident thereof;

10  or perform some act by which he purposefully avails himself of the privilege of

11  conducting activities in the forum, thereby invoking the benefits and protections of its

12  laws." *Id*. Second, "the claim must be one which arises out of or relates to the defendant's

13  forum-related activities." *Id*. Finally, "the exercise of jurisdiction must comport with fair

14  play and substantial justice, i.e. it must be reasonable." *Id*. The plaintiff bears the burden

15  of establishing the first two prongs. *Id.* If the plaintiff succeeds, the burden then shifts to

16  the defendant to "present a compelling case" that the exercise of jurisdiction would not be

17  reasonable. *Id.*

18        The Ninth Circuit has evaluated the first prong "somewhat differently" depending

19  on whether the case involves tort or contract. *Yahoo! Inc. v. La Ligue Contre Le Racisme*

20  *Et L'Antisemitisme*, 433 F.3d 1199, 1205–06 (9th Cir. 2006) (en banc). For cases

21  sounding in contract, as is here, courts generally apply the purposeful availment test.

22  *Schwarzenegger*, 374 F.3d at 802. To constitute purposeful availment, a defendant "must

have deliberately reached out beyond its home" to the forum state—for example, by "exploiting a market in the forum State or entering a contractual relationship centered there." *Id.* (citation modified). Business activity "constitutes purposeful availment when that activity reaches out and creates '*continuing relationships and obligations*' in the forum state." *Silk v. Bond*, 65 F.4th 445, 457 (9th Cir. 2023) (quoting *Boschetto v. Hansing*, 539 F.3d 1011, 1017 (9th Cir. 2008)). Purposeful availment can be established by "a contract's negotiations, its terms, its contemplated future consequences, and the parties' actual course of dealing." *Davis v. Cranfield Aerospace Sols., Ltd.*, 71 F.4th 1154, 1163 (9th Cir. 2023) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 479 (1985)).

Pacific Reign pleads sufficient facts in its complaint and submitted declarations to show that OXE Inc. purposefully availed itself of the privilege of doing business in Washington. OXE Inc. is a manufacturer and distributor of OXE engines. *See* Meddock Decl., Dkt. 23-3 at 1. Pacific Reign purchased OXE engines in Washington, where they were warrantied. Dkt. 1-1 at 2. OXE Inc. is expressly listed as a contact to that warranty, and OXE Inc. repeatedly serviced the engines in fulfillment of it. Dkt. 3-1 at 27. OXE Inc. performed the following warranty-related services: diagnosing engine issues, attempting numerous repairs, replacing the engines, paying bills associated with repairs, and coordinating and paying the Washington vessel manufacturer and seller, ACI, to complete additional repairs. Although OXE Inc. asserts that it provided these services in Oregon, where the vessel was moored, the work was all performed in connection with the engines purchased and warrantied in Washington.

1    Furthermore, both OXE Marine AB and OXE Inc. employees repeatedly told

2    Pacific Reign's owners and its representatives that OXE Inc. had assumed warranty

3    responsibility and technical support for OXE engine issues. *See e.g.*, Meddock Decl.,

4    Dkt. 23-3 at 1 (OXE Inc. executive Davis emailed, "I'm with Oxe Marine Inc[.] and we

5    manufacture diesel outboard motors. We will be coming to your shipyard next week to do

6    warranty exchange on two outboards on Pacific Reign boat."); Tiran Decl., Dkt. 24 at 3

7    (OXE Marine AB's counsel told Pacific Reign's marine consultant that "OXE Marine

8    Inc." would honor the OXE warranty, which included remedies such as buyback of

9    defective engines, replacement costs, and technical support.). OXE Inc. does not provide

10    any evidence to oppose Pacific Reign's assertions, and at this stage of the proceedings,

11    the Court must resolve all factual contentions in Pacific Reign's favor. *See*

12    *Schwarzenegger*, 374 F.3d at 800.

13    OXE Inc.'s contacts with Washington were not random or fortuitous, nor were

14    they meant to be the product of a one-time transaction. Pacific Reign meets its burden of

15    showing that OXE Inc. purposefully availed itself of doing in business in Washington,

16    satisfying the first prong of the specific jurisdiction test.

17    Pacific Reign also meets the second prong's requirement that Pacific Reign's

18    claims must arise out of or relate to OXE Inc.'s contacts with Washington. The Ninth

19    Circuit does not require a strict causal relationship. Rather, a claim "arises out of" a

20    defendant's contacts with the forum state if there is a "direct nexus" between those

21    contacts and the cause of action. *Fireman's Fund Ins. Co. v. Nat'l Bank of Cooperatives*,

22    103 F.3d 888, 894 (9th Cir. 1996). Here, there is a direct nexus between the subject of

1    Pacific Reign's claims—the OXE engines purchased and warrantied in Washington—and

2    OXE Inc.'s efforts to fulfill warranty obligations arising from that purchase. Pacific

3    Reign meets its burden of satisfying the second prong.

4         Finally, OXE Inc. fails to meet its burden under the third prong to show that

5    Washington's exercise of jurisdiction would be unreasonable. OXE Inc. supplies OXE

6    engines to OXE engine dealers in Washington. It is also named on the OXE warranty as a

7    contact. OXE Inc. has not shown that litigating in Washington would be "so gravely

8    difficult and inconvenient" as to render the Court's exercise of personal jurisdiction

9    unreasonable. *Burger King*, 471 U.S. at 478 (quoting *The Bremen v. Zapata Off–Shore*

10   *Co.*, 407 U.S. 1, 18 (1972)).

11        The Court concludes that Pacific Reign's allegations are sufficient to establish that

12   this Court has specific personal jurisdiction over OXE Inc.

13        OXE Inc.'s motion to dismiss is therefore **DENIED**.

14   **B.    Pacific Reign fails to state a plausible claim for relief**

15        OXE Inc. argues that Pacific Reign fails to state a claim for relief for the same

16   reasons it believes the Court lacks jurisdiction. Dkt. 15 at 7. It contends that because

17   OXE Inc. did not manufacture the engines or provide the warranty, it cannot be held

18   liable for any breach of warranty claims. *Id.*

19        Pacific Reign contends that OXE Inc. is liable under the warranty because as an

20   end user, Pacific Reign was an intended third party beneficiary to the warranty. Dkt. 22 at

21   13–14. Pacific Reign contends that even if OXE Inc. was not originally responsible for

22

1    the warranty, it assumed the warranty's obligations through its conduct and is therefore

2    estopped from denying liability. *Id.* at 14–15.

3         Dismissal under Federal Rule of Civil Procedure 12(b)(6) may be based on either

4    the lack of a cognizable legal theory or the absence of sufficient facts alleged under a

5    cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir.

6    1988). That the Court has personal jurisdiction over OXE Marine does not necessarily

7    mean that Pacific Reign's claims against it can survive a Rule 12(b)(6) motion for failure

8    to state a claim. While the court may consider extra-pleading material when determining

9    whether it has personal jurisdiction over defendants, it must exclude that same evidence

10   when considering whether the complaint states a claim, even when the two questions turn

11   on the same issue. *Stewart v. Screen Gems-EMI Music, Inc*., 81 F. Supp. 3d 938, 951

12   (N.D. Cal. 2015). On a Rule 12(b)(6) motion, the Court's review is "limited to the

13   complaint, materials incorporated into the complaint by reference, and matters of which

14   the Court may take judicial notice." *Metzler Inv. GMBH v. Corinthian Colleges, Inc*., 540

15   F.3d 1049, 1061 (9th Cir. 2008).

16        To survive a Rule 12(b)(6) motion to dismiss, a plaintiff's complaint must contain

17   "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v.*

18   *Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff

19   "pleads factual content that allows the court to draw the reasonable inference that the

20   defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678

21   (2009).  The Court accepts factual allegations in the complaint as true and construes all

22   reasonable inferences in the light most favorable to the nonmoving party. *Vasquez v. Los*

1    *Angeles Cnty.*, 487 F.3d 1246, 1249 (9th Cir. 2007). The Court need not, however, accept

2    as true unwarranted deductions of fact, unreasonable inferences, legal conclusions, or

3    statements that are merely conclusory. *Id.*

4        On a 12(b)(6) motion, "a district court should grant leave to amend even if no

5    request to amend the pleading was made, unless it determines that the pleading could not

6    possibly be cured by the allegation of other facts." *Cook, Perkiss & Liehe v. N. Cal.*

7    *Collection Serv.*, 911 F.2d 242, 247 (9th Cir. 1990). However, where the facts are not in

8    dispute, and the sole issue is whether there is liability as a matter of substantive law, the

9    court may deny leave to amend. *Albrecht v. Lund*, 845 F.2d 193, 195–96 (9th Cir. 1988).

10   **1.    Pacific Reign does not allege sufficient facts to establish any of its warranty claims**

11

12       Pacific Reign asserts three warranty-related claims: breach of written warranty,

13   breach of warranty-failure of essential purpose under RCW 62A.2-719(2), and violation

14   of the Magnuson-Moss Warranty Act (MMWA) for failure to comply with the "written"

     warranty terms. Dkt. 3-1 at 13.

15       OXE Inc. argues that all three claims must be dismissed because neither Pacific

16   Reign nor OXE Inc. is a party to the warranty. Dkt. 15. at 7; Dkt. 26 at 5. It asserts that

17   the OXE engine warranty names only OXE Marine AB and its authorized OXE

18   distributors or dealers as parties, and specifically excludes end users like Pacific Reign

19   from enforcing the terms. Dkt. 26 at 5. It contends that because OXE Inc. and Pacific

20   Reign are not in privity of contract, Pacific Reign's breach of express and implied

21   warranties must be dismissed. *Id.*

22

1    Pacific Reign replies that although Washington law generally requires contractual

2    privity in warranty actions, an unnamed, intended third party beneficiary may still

3    recover. Dkt. 22 at 13–14. It contends that as the purchaser and ultimate user of the

4    engines, it is an intended beneficiary with "necessary privity" to enforce the warranty

5    against the manufacturer of OXE engines. *Id.* at 13.

6        In the alternative, Pacific Reign contends that even if OXE Inc. is not directly

7    responsible for the warranty's term, it is estopped from denying liability now. Dkt. 22 at

8    14–15. Pacific Reign asserts that OXE Inc. held itself out as the party responsible for

9    providing warranty services by replacing the engines, reimbursing costs related to the

10   faulty engines, communicating directly about engine and warranty issues, directing other

11   companies to perform warranty work, and sending employees to repair the engines. *Id.* at

12   15. Pacific Reign contends that because it reasonably relied upon OXE Inc.'s actions,

13   OXE Inc. cannot take a contrary position now to avoid liability. *Id.*

14       ACI also opposes OXE Inc.'s motion, contending that fact discovery is required

15   before the Court can conclude that OXE Inc. does not share vertical privity with Pacific

16   Reign. Dkt. 19. It argues that state and federal law prohibit OXE Inc. from limiting its

17   warranties to only authorized distributors. ACI asserts that under Washington law,

18   "implied warranties" are enforceable if the manufacturer is "involved in the transaction,

19   knew the purchaser's identity and purpose, communicated with the purchaser, or

20   delivered the goods." *Id.* at 10 (citing *Thongchoom v. Graco*, 117 Wn. App. 299 (2003)).

21       Washington courts require "privity of contract between the parties" in actions

22   based on breach of warranty, whether express or implied. *Lidstrand v. Silvercrest Indus.*,

28 Wn. App. 359, 362–63 (1981). Privity refers not only to a direct contractual relationship between the user and the seller; it may also be established when the end user is a third party beneficiary to the warranty. *Kim v. Moffett*, 156 Wn. App. 689, 699 (2010). In particular, courts have found privity where a "manufacturer makes express representations to a plaintiff" and the plaintiff is aware of those representations. *Touchet Valley Grain Growers, Inc. v. Opp & Seibold Gen. Constr., Inc.*, 119 Wn.2d 334, 347 (1992); *see also Baughn v. Honda Motor Co.*, 107 Wn.2d 127 (1986) ("The privity requirement is relaxed, however, when a manufacturer makes express representations, in advertising or otherwise, to a plaintiff.").

For example, in *Schroeder v. Fageol Motors, Inc.*, 12 Wn. App. 161, 166 (1974), the Washington Court of Appeals held that a truck owner could recover from an engine manufacturer for breach of "express contractual agreement to repair" even though the manufacturer had not provided a warranty directly to the owner. There, a truck dealer provided a written warranty to a purchaser. After the engine failed, the truck owner sued the truck dealer and the engine manufacturer for damages. The manufacturer argued that it could not be liable under the warranty because it identified only the seller and purchaser as parties. The court rejected this argument, concluding that the manufacturer's engine warranty—distributed to dealers with every engine it produced and then passed on to purchasers through the dealer's warranty with "substantially" the same terms—was intended to benefit the "end user." *Id.* at 164. The court noted that the engine manufacturer initially honored the warranty by attempting to repair the engine and held

1   that because the truck owner was a third party beneficiary to the manufacturer's warranty,

2   he was entitled to recover. *Id.*

3        In *Kadiak Fisheries Co. v. Murphy Diesel Co*., 70 Wn.2d 153 (1967), the

4   Washington State Supreme Court considered whether an engine manufacturer could be

5   held liable for breach of an *implied warranty* even though a fishing vessel owner bought

6   the diesel motor directly from a dealer and not the manufacturer. The Court held that it

7   could, explaining that the owner was a third party beneficiary of the manufacturer's sale

8   of the engine to the dealer. In making the decision, the Court evaluated the "sum of

9   interaction" between the vessel purchaser and the manufacturer: the manufacturer knew

10  the identity, purpose, and requirements of the purchaser's specifications and shipped the

11  motor directly to the purchaser. *Id.* at 164–65. The manufacturer also helped install the

12  motor and then attempted to fix it. *Id.* at 165. The court concluded that the fishing vessel

13  purchaser was a beneficiary of the manufacturer's contract with the dealer, creating

14  privity between the purchaser and manufacturer. *Id.*

15       Pacific Reign fails to plead sufficient facts *in its complaint* to establish privity with

16  OXE Inc. OXE Inc. and Pacific Reign are not named parties to the OXE engine warranty.

17  Instead, the warranty identifies OXE Marine AB as the entity responsible for fulfilling

18  the warranty's terms and identifies OXE Marine AB's distributors as the entities

19  authorized to enforce it. The complaint contains no facts connecting OXE Inc. to OXE

20  Marine AB or explaining why OXE Inc. should be held liable notwithstanding it is not

21  named as the warrantor. The complaint also does not allege any legal theory as to why

22  Pacific Reign is permitted to recover as an end user. Pacific Reign does not state facts in

1    its complaint that OXE Inc. is the manufacturer of the initial set of engines, an OXE

2    engine distributor, or that OXE Inc. made any representations upon which Pacific Reign

3    relied. While it is plausible that OXE Inc. may be found liable to Pacific Reign for breach

4    of warranty under theories of privity, third party beneficiary, assumption of contract,

5    express representations, or even alter ego (as Pacific Reign's argues for jurisdictional

6    purposes), Pacific Reign has not alleged these theories in its complaint nor sufficiently

7    pleaded facts to support these arguments.

8         Pacific Reign also fails to plausibly allege that OXE Inc. is equitably estopped

9    from limiting liability. The elements of equitable estoppel are: "(1) an admission,

10   statement or act inconsistent with a claim afterwards asserted, (2) action by another in

11   [reasonable] reliance upon that act, statement or admission, and (3) injury to the relying

12   party from allowing the first party to contradict or repudiate the prior act, statement or

13   admission." *Lybbert v. Grant Cnty., State of Wash.*, 141 Wn.2d 29, 35 (2000). Pacific

14   Reign's complaint does not identify any statements or admissions by OXE Inc.

15   employees that could give rise to an estoppel claim. Although materials outside the

16   pleadings suggest that OXE Inc. may have assumed OXE Marine AB's warranty

17   obligations, those facts do not appear in the complaint. [3] At this stage, the Court is limited

18   in what it may consider.

19

20   _____

21       [3] It is also unclear from Pacific Reign's complaint or briefing if equitable estoppel
     supports Pacific Reign's claims for relief. Under Washington law, equitable estoppel, unlike
     promissory estoppel, is a defense and not a claim on which relief can be granted. *Byrd v. Pierce*

22   *Cnty.*, 5 Wn. App. 2d 249, 265 (2018).

Pacific Reign fails to sufficiently allege a claim for breach of express or implied warranty. Consequently, its MMWA claim likewise fails, as MMWA claims are derivative of state law claims of breach of express and implied warranties. *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir. 2008) (explaining that "the claims under the Magnuson–Moss Act stand or fall with [the plaintiff's] express and implied warranty claims under state law").

Pacific Reign's claims for breach of written warranty, breach of warranty-failure of essential purpose, and violation of the MMWA are therefore **DISMISSED. However, as discussed above, OXE Inc. can plausibly allege facts supporting these claims, and it may therefore file an amended complaint within 21 days.**

### 2.    Revocation of Acceptance

Pacific Reign concedes that the remedy of revocation of acceptance is sought only against Defendant ACI as the seller of the vessel. Dkt. 22 at 17. Pacific Reign's revocation of acceptance claim against OXE Inc. is therefore **DISMISSED with prejudice**.

### III.   ORDER

It is hereby **ORDERED** that defendant OXE Inc's motion to dismiss, Dkt. 15, is **DENIED in part and GRANTED in part**. Pacific Reign may file an amended complaint addressing the deficiencies described above within 21 days.

//

//

//

Dated this 3rd day of December, 2025.

BENJAMIN H. SETTLE
United States District Judge